# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
a blue iPhone with a black case, bearing an unknown ) Case No. M-22-249       -STE
IMEI number, stored at HSI, 3625 NW 56th St., )
Oklahoma City, OK )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
   ☑ evidence of a crime;
   ☑ contraband, fruits of crime, or other items illegally possessed;
   ☑ property designed for use, intended for use, or used in committing a crime;
   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:
See attached Affidavit.

   ☑ Continued on the attached sheet.
   ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ryder Burpo, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Apr 6, 2022**

*Judge's signature*

City and state: Oklahoma City, Oklahoma      Shon T. Erwin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Ryder Burpo, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I have been employed as a Special Agent of the U.S. Department of Homeland Security, Homeland Security Investigations (HSI) since June 2019, and am currently assigned to Oklahoma City, Oklahoma. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I have arrested, interviewed, and debriefed numerous individuals who have been involved and have personal knowledge of importing, transporting, and concealing controlled substances, as well as the amassing, spending, converting, transporting, distributing, laundering and concealing of proceeds from controlled substance trafficking and smuggling. I have testified in judicial proceedings concerning the prosecution for violations of laws related to the unlawful possession of firearms and smuggling and trafficking of contraband, including controlled substances. I have been the affiant of numerous search warrants, including warrants authorizing the search of electronic devices.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S. Code §§ 841 and 846 have been committed by Joshua Orduno and Jasson Urias and other unidentified individuals. There is also probable cause to believe that the information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses. Based on my training and experience, I know that individuals who are involved in criminal organizations maintain books, records, receipts, notes, ledgers, and other papers relating to their clients and associates. Furthermore, based on my training and experience, I know that these individuals often utilize phones, computers, emails, text messages, and other computer-facilitated communication software to communicate and maintain contact with their clients and associates.

5.      Through my training and experience, I have become familiar with some of the methods by which illegal drugs are imported, distributed, and sold, as well as the means used by drug dealers to disguise the source and nature of their profits including money laundering and structuring schemes. I have also gained experience in the conducting of such investigations through attending mobile forensics training, financial investigations training, cyber-crimes investigations training, drug investigations training, seminars, and everyday work. In light of this training and experience, I know the following:

    a.      I am aware of the methods in which drug couriers and distributors associated with Drug Trafficking Organizations (DTOs) often use electronic devices, to include but not limited to, computers, tablets, cell phones, and other electronic storage

devices, to communicate and execute electronic transactions which can, in turn, create automatic records and documentation of the transactions;

      b. I am aware that that it is particularly common for individuals engaged in the sale and distribution of illegal narcotics to use electronic devices to track and document financial transactions;

      c. I am aware that individuals engaged in the sale and distribution of illegal narcotics will frequently keep contact information and other evidence of their financial dealings with DTOs on cellular phones, computers, tablets, and other storage devices and that they often keep such electronic devices on or near their person.

      d. I am also aware that individuals engaged in the sale and distribution of illegal narcotics will use cellular phones to further their financial businesses using digital communication, including, but not limited to, e-mail and instant messaging; and

      e. I am aware that to accomplish the overall goals of individuals engaged in the sale and distribution of illegal narcotics utilize banks, financial institutions, and their attendant services, which in today's day and age, are routinely accomplished through the use of electronic devices like cellular phones that may be used in conjunction with other electronic devices and the Internet.

## **IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

6. This affidavit is made in support of an application for a warrant to search a blue iPhone with a black case hereinafter listed as "Device 2." Device 2 is currently in secure evidence storage at HSI Oklahoma City, located at 3625 NW 56th St, Oklahoma City, OK.

7. The applied-for warrant would authorize the forensic examination of the device for the purpose of identifying electronically stored data particularly described in Attachment B.

**FACTUAL BACKGROUND**

8. The United States is investigating Joshua Orduno and Jasson Urias ("URIAS and ORDUNO") for violations of 21 U.S. Code §§ 841 (possession and distribution of a controlled dangerous substance) and 846 (attempt and conspiracy).

9. On March 30, 2022, HSI Oklahoma City received a request for assistance from Oklahoma Highway Patrol (OHP). Trooper Doug George conducted a traffic stop on Interstate Highway 40 (I-40) near mile marker 11 in Beckham County, Oklahoma within the Western District of Oklahoma. Trooper George stated that during the traffic stop, he discovered multiple bundles of suspected cocaine within the natural void of the quarter panels of the vehicle occupied by **Urias and Orduno**. **Urias** was identified as the driver of the vehicle and was detained. **Orduno** was identified as the registered owner of the vehicle and was also detained as a passenger of the vehicle. HSI Agents requested that Trooper George meet them at the Flying J Truck Stop in Sayre, Oklahoma.

10. I responded, along with Task Force Officer (TFO) Cliff Kinsley, to the Flying J truck stop where we met with Trooper George. Trooper George stated that at 2:20 a.m., he observed the red Chevy Camaro, bearing Arizona temporary license plate 82536HP, with a paper tag which was not properly displayed and was flapping in the wind in such a manner that the tag number could not be properly discerned. The traffic violation and the traffic stop occurred in Beckham County, in the Western District of Oklahoma.

4

Trooper George stated that he approached the vehicle where he made contact with the driver, Jasson Urias. Urias presented an Sonora Mexico driver's license in the name of Jasson Urias showing an address of Ignacia Fimbres 500 San Felipe Magdalena, Sonora, Mexico.

11. Trooper George informed Urias of the reason for the stop and directed Urias to have a seat in the front seat of his marked patrol vehicle. During this interaction, Trooper George observed Urias to be very nervous. Urias level of nervousness was excessive for a minor traffic violation resulting in a warning.

12. During the traffic stop, Trooper George asked Urias where he was coming from. Urias stated that he was coming from Los Angeles, California and was traveling to Philadelphia, Pennsylvania.

13. During the course of the traffic stop, Trooper Hyde and his certified narcotics canine, Six, responded to assist Trooper George. Six alerted to the presence of the odor of illegal narcotics on the rear of the Camaro.

14. Trooper George searched the Camaro and found in the natural void of the vehicles quarter panels multiple bundles of suspected cocaine. Additionally, a doll of the movie character, "Chucky", was found with a cell phone hidden within the leg of the doll.

15. A field test was conducted on the suspected cocaine which produced a positive result for cocaine. This substance had a total weight of 20 kilograms.

16. Device 2 was found on the person of Joshua Orduno.

17. Urias was taken to the passenger seat of TFO Kinsler's vehicle, where I and TFO Kinsler introduced ourselves to Urias. Through the use of a Lionbridge Spanish

5

translator utilized from a cell phone, we advised him of his Miranda rights, reading verbatim from the form in a Spanish translation. Urias immediately invoked his right to an attorney.

18. Orduno was taken to the passenger seat of TFO Kinsler's vehicle, where TFO Kinsler and I introduced ourselves to Orduno through the use of a Lionbridge Spanish translator utilized from a cell phone. We advised him of his Miranda rights, reading verbatim from the form in a Spanish translation. Orduno signed his Miranda waiver form agreeing to speak with us without an attorney. When asked about the narcotics found in the vehicle, Orduno claimed no knowledge of the narcotics. Orduno stated that they had started their journey in Oklahoma and had been driving in the vehicle for approximately eight hours. Considering the location of the traffic stop and the east bound direction of travel, this was factually implausible. Orduno stated they were headed to Philadelphia, Pennsylvania for a construction job. When asked where they had begun their journey, Orduno evaded the question by continuing to state they had started in Oklahoma, however, he could not name the city where their journey had begun, and that they had traveled since approximately 7 p.m.

19. After speaking with Trooper George the following day, Trooper George provided a photo of receipt he found in the vehicle for a blue Motorola cell phone, IMEI 352304809032272 on March 28, 2022, two days prior to the traffic stop. This same Motorola cell phone (Device 3) was found in a rip in the leg of the "Chucky" doll found in the vehicle. Based on my training and experience, I believe URIAS and ORDUNO were knowingly transporting cocaine from California to possibly Philadelphia. This conclusion

6

is based on the information gathered including the fact that there was a third cell phone purchased in Los Angeles and found hidden in the vehicle, the use of the natural void of the vehicle to transport the cocaine, and the implausible story that ORDUNO told agents.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Cellular phones have the ability to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, access the Internet, and to use manufacturer installed, as well as downloaded, applications to conduct basic computing and data services. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

21. There is probable cause to believe that things that were once stored on **Device 2** may still be stored there, at least for the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer or cellular device the data contained in the file does not

       actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer or cellular phone's operating system may also keep a record of deleted data in a "swap" or "recovery"

    c. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22. *Forensic evidence.* As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Device 2** was used, the purpose of their use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **Device 2** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what

tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the

        application of knowledge about how that particular device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit the examination of the device consistent with the warrants. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24.    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25.    Based on the above information, I respectfully submit there is probable cause to believe **Device 2** described in Attachment A contains evidence of violations of 21 U.S.C. §§ 841 and 846 among others. The items listed in Attachment B are evidence of these crimes, contraband, fruits of these crimes, or property that is or has been used as the means of committing the foregoing offenses as well as other items illegally possessed.

26. Therefore, I respectfully request that a search warrant be issued, authorizing the search of **Device 2** described in Attachment A, and the seizure of the items listed in Attachment B.

*[signature]*
RYDER BURPO
Special Agent,
Homeland Security Investigations

Subscribed to and sworn before me on April _6_, 2022.

*[signature]*
SHON T. ERWIN
United States Magistrate Judge

## ATTACHMENT "A"
## Items to be searched

**Device 2.** blue iPhone with a black case



# ATTACHMENT B

All records on the devices described in Attachment A that relate to violations of Title 21, U.S.C. §§ 841 and 846 including, but not limited to:

1. Lists of customers and related identifying information;

2. Types, amounts, and prices of controlled substances as well as dates, places, and amounts of specific transactions;

3. Any information related to sources of controlled substances (including names, addresses, phone numbers, emails, notes or any other identifying information);

4. Communications regarding controlled substance offenses;

5. All bank records, checks, credit card bills, account information, and other financial records;

6. Evidence related to the possession, use, storage, or purchase of any vehicles, vessels, or other items that could be used as a means of transporting controlled substances;

7. Evidence, including geolocation records, related to locations used as meeting places, places used to store proceeds, instrumentalities, controlled substances, firearms possessed or used in the furtherance of drug trafficking, or other contraband;

8. Phone call records (incoming, outgoing, missed calls), voicemail, text messages (mms/sms/picture/video/etc.), emails, video chats, direct messaging, encoded messaging, mobile applications, and all other forms of communication that could be utilized to plan and discuss the transportation, packaging, distribution, sale, or concealment of controlled substances or drug proceeds;

9. Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames, passwords, documents, and browsing history;

10. Any digital data or material including video, audio, and still photography, lists, notes, and other text data relating to the distribution of controlled substances; and

11. Call history, contact name and numbers, voice and text messages, emails, pictures, videos, and/or other electronic data relating to drug activity.